The last argued appeal this morning is docket number 23-1321, Kalajdzic v. HHS. Ms. Wilson?  Good morning, Your Honors. May it please the Court. My name is Amber Wilson and I am here today on behalf of Petitioner Appellants. Petitioners are not here today to ask you to reweigh the evidence and make different factual conclusions. The Chief's error in this case is that he raises AK's legal burden by viewing the evidence from a vantage point that is inconsistent with the law. The Chief uses the total weight of the epidemiology data to conclude that it outweighs, undermines, and refutes. That is legal error. He also concludes that the VAERS reports and case reports are an uncompelling substitute. Also, legal error. And he ignores the testimony from Respondent's expert conceding the biological mechanistic data that connects the dots. All legal error. It sounds like there's a debate here in this case about what is the right legal standard for judging the ALFN factors, particularly ALFN factor 1. And if I understand the way the Special Master and the Claims Court looked at that ALFN 1 factor, they essentially looked at the question as, is it more likely than not that flu mist can cause narcolepsy? Would you say that's an accurate summation of the way the Special Master looked at the question? Yes, Your Honor. He does state that he looked at it. Okay. And is that a wrong way as a matter of law to think about the ALFN 1 issue? Yes, Your Honor. I think there's two things here. First, the standard of review and Petitioner's position is that it is contrary to law. He elevated the burden. What we're talking about here is a review of the scientific literature. We're talking about the chiefs... And where do you elevate the burden to? Well, under Prong 1 specifically, okay, what we're talking about is the Petitioner's need to bring some indicia of reliability that is biologically plausible to causally connect these two things, right? To causally connect the flu mist and the narcolepsy. And so if I was to... But ultimately, the burden for the conclusion under ALFN 1 is still a preponderance, right? The conclusion under ALFN 1 has to do with bringing scientific evidence. And the reason that this is so contrary to law is because what we're talking about... Wait. I'm just... I'm trying to get the very simple basics of your argument. And that is, does a preponderance standard apply to ALFN 1? Or are you arguing that as opposed to the other two ALFN factors, which clearly require a preponderance, ALFN 1 only requires a plausible basis? Well, under ALFN 1, the act has its own evidentiary preponderant burden, right? That is what ALFN is. And so under Prong 1, the special master must apply a vantage point of the act's preponderant evidentiary burden. So we're not talking arbitrary, capricious decisions like diagnosis or onset. We're talking about his interpretation of the scientific testimony and literature. Right. But let me follow up on my question and I think what is tied to Judge Hughes's question. And that question is, my understanding of the law is, and I think the special master's understanding of the law is, is that he had to ask himself the question, based on the evidence in front of him, is it more likely than not that flu mist can cause narcolepsy? And I know a lot of your briefings seem to have a lot of trouble with the legal standard that, and you were claiming legal error by the special master. And so what I'm trying to explore is, is it your view that the law really for ALFN 1 is, is it plausible that flu mist can cause narcolepsy? And if that's your position, then we can have a discussion on whether that's the right articulation of how to think about ALFN 1 in this case. Is that in fact your view? Is it plausible that flu mist can cause narcolepsy? Yes, Your Honor. Our view is that under ALFN prong 1, the focus should be on what kind of scientific evidence or reliability is there that it is biologically plausible to connect these two things. If I said to you, if I was alleging that flu mist caused a broken arm, you would say, that doesn't sound very biologically plausible. So your view is, you do not have to persuade the special master's fact finder by a preponderance of the evidence that there could be a causal connection between flu mist and narcolepsy. That's your position. Well, petitioner's burden there is legal, it's not scientific. So the amount of data or the... Is it preponderance of the evidence or is it... Well, there is a preponderance of the evidence under ALFN. There is. But there is a vantage point that the evidence has to be looked at. So if you look at what, for example, the experts say in this case, right? The experts say that when we bring the experts, they're generally explaining, they're saying, what could cause narcolepsy and how do we connect that to the pathology? So what they're saying in this case, all of the experts are saying, we know, this is what we know about narcolepsy. We know that it needs an environmental trigger. We know that there are two very relevant connections that do causally connect to narcolepsy. That's the pandemics and the wild type infection. And they all agree that there are these biological mechanistic explanations that causally connect the pandemics and the H1N1. And Dr. Ahmed comes in and he says, look, I also agree that this is good science and under the standard of the act, he should be allowed to circumstantially apply and scientifically explain why that evidentiary data that everyone agrees is so relevant applies to trying to connect a flu-missed narcolepsy connection in this case. Because in this case, we are focused on proving only a case causation, in fact. And so he actually says, he says, it does circumstantially connect because it's a live flu vaccine. So it also can infect the part of the brain. What happens when the government comes in with its own expert testimony or scientific literature and provides evidence that it doesn't connect? Then doesn't the special master have to determine on a preponderance of the evidence standard which one prevails? Well, yes, your honor, that's a great question. And that is exactly why we have the vantage point of the acts preponderance evidence burden. That's why we have Allison. Because there's always going to be literature on the other side. And when you look at this from a public health standpoint, you want the science evidence on the other side to add up to vaccine safety. So that is why the law recognizes that under the act, we have its own evidentiary burden. And it is legal. It is not scientific. And so when Dr. Ahmed comes in and he says... So the answer to Judge Hughes' question is yes. Yes. Ultimately, you have to persuade, the petitioner has to persuade the special master by a preponderance and often factor one. Recognizing that there's usually going to be evidence on both sides. So your answer is yes, that is our burden. That is correct. But the vantage point with which the special master has to specifically look at the scientific literature, the reason that is legal error is, and if you look at this case, that is the purpose. Are you saying that once you come forth with a plausible basis for the science, that the special master can't look at other evidence and say, I disagree, that there is a no plausible basis? Well, I think that when you look at... I think that the special master can't agree, or disagree. When you look at the law, it's not as if we don't have other cases where, you know, it is some reliability, but where you're trying to connect that, if you look at this case, for example, right, we have VAERS data and we have case reports. And so it's not as if we're trying to just piece together some science and say, this is where vaccines fit. We're actually bringing you evidence of real life patients in other cases that are published in the medical literature, where other experts have said, we aren't causally connecting this. This is a potential link that we saw. I mean, the special master had that before him, right? He does have that before him in this case. And he had other evidence before him, so he relied on to reject that. Right. And that is what we're saying is the legal error. Isn't that just the preponderance standard? Not under the vantage point of the act, because the act requires the allowance of circumstantial evidence. He didn't not allow the evidence. He just didn't find it sufficient to meet your preponderance standard. I don't understand this vantage point of the act argument at all. Either you're arguing for a less than preponderance standard on all than one, which I think is inconsistent with our precedent, or you're just disputing that is finding that your evidence was not sufficient to meet your burden. Your Honor, what I believe he's, the way he's misapplying the law is in the way that he's looking at the evidence. He's searching for objective confirmation, and the statute says that there's no objective confirmation requirement. So the purpose and the vantage point that he's supposed to look at the evidence with is that he's supposed to allow a finding of causation, because this is a field that is bereft. We know that we're not going to be able to bring direct evidence. So what he's saying with the evidence on the other side is he's really saying that you didn't bring me any direct proof with flumist. You only bought me circumstantial evidence. And under the law, he's allowed, petitioners are allowed to use that circumstantial evidence. And so when you look at what he's added to, you know, what the petitioners are bringing, they're not just bringing, you know, biological mechanisms, which everyone agrees should apply and is some addition of reliability. But he's also bringing, he's bringing, you know, the other side agrees. We have two other sets of data with the pandemic's vaccine, and it has the exact same component in it. And it functions just like the live wild type vaccine. And we have other reports in the data of other scientists and other medical doctors saying the concern was, is that there were a number of studies or articles, IADS reports, Duffy, the Sarkhanan meta study, and they, they had trouble connecting narcolepsy to all sorts of flu vaccines that were not pandemics. And, and then there was studies, I don't know, I can't remember, Dr. Ahmed or someone else that seemed to really zero in on the adjuvant element of, of pandemics that was possibly associated with triggering narcolepsy. So I'm, I'm struggling with your argument here when it feels like when you look at the overall complexion of the record, there seemed to be a lot of evidence on the other side against your theory. And so now I'm trying to understand what is it that I can do under a very deferential standard of review, use of discretion, to say that something went really amiss with this special master's analysis? I, I, you know, and I understand, and I think that that is what the petitioners are saying is that the standard of review is contrary to law, arbitrary and capricious for other issues, like diagnosis, onset, things that, you know, the trial judge gets deference. Here under the vantage point, Andrew says that the special master is not allowed to look at the evidence from the vantage point of the lab lens. So when you're adding up that, that, that evidence from the other side, Dr. Ahmed credibly testifies in this case, and he says you cannot add that evidence up because that evidence will always be there for all the other flu vaccines. What those reports are talking about is that all the other flu vaccines are safe. And so what the vantage point is saying is that when petitioners bring you very strong evidence, we don't just have epidemiology data, we have epidemiology data, we have biological mechanisms, we have VAERS reports, we have case reports, all of that evidence is supposed to add up. But if you look at what the chief does, he narrowly divides it, right, and then he says it can't apply. He says he doesn't give it legal causation weight, he gives it scientific weight. Ms. Wilson, I think we have your argument, let's just move to government. Thank you, Your Honor. Thank you, Your Honor. May it please the court. My name is Alex Sachs, I represent Respondent Apelli, the Secretary of Health and Human Services, this matter. Chief Special Master Court Green correctly determined that petitioners failed to establish by preponderant evidence that the flu-miss vaccine is administered to AK in October and December of 2014, caused, in fact, his narcolepsy. In reaching this determination, he comprehensively addressed the evidence of record, applied the appropriate legal standard, that of preponderance, and articulated reasoned and supported explanations for his determination that the evidence preponderated against the finding that the flu-miss vaccine can cause type 1 narcolepsy. Contrary to appellant's arguments, the Chief Special Master did not improperly require that petitioners provide epidemiological evidence or direct proof for scientific certainty that the specific manufacturer brand of flu vaccine, flu-miss, can cause narcolepsy. Rather, he merely considered the relevant evidence of record, which included epidemiological studies that found no association between unadjuvanted H1N1 flu vaccine and narcolepsy, and found this conclusion probative to his causation determination. Nor did he err in relying, in part, on his analysis in prior similar cases to support his conclusion that flu-miss vaccine cannot cause narcolepsy, as the Special Masters may draw upon their experience in resolving similar claims. Appellant's various arguments in support of their overall contention that the Chief legally erred by raising the burden for proving causation under ALF and Prong 1 are simple disagreements with the Court's weighing of the evidence. Because Chief Special Master's findings were not legally erroneous in abuse of discretion or arbitrary and capricious, Respondent respectfully requests that this Court affirm the Chief Special Master's June 17, 2022 decision. Can you talk about the Special Master's reliance on his experience with similar cases? That was an issue that was interesting to me. Isn't there – shouldn't we have some concern about the Special Master doing that and perhaps making decisions that are not really grounded in the record before him in a specific case? Well, respectfully, I would disagree that his decision was not grounded in the record before him. He has expressed in his analysis at the outset that his decision is based on the evidence before him. The Chief addressed more recent scientific studies filed as exhibits in this particular case. Judge Chen, you mentioned the Sarkinen IABS report, both published after what I believe, Judge Stark, you're referring to the Chief's decision in Di Chuale. There's no error in the Chief relying on his past determinations. Initially, the scope of inquiry is nearly unlimited. White Pond says that. The Chief is – would be remiss to not look at prior similar cases where similar, if not – or mirrors – closely mirrors – appellant's arguments closely mirror the theories in Di Chuale. And that was the case. It was a flu, mists, narcolepsy case. The articles that petitioners primarily relied on in that case, Ahmed reports, same as here. In fact, they had Dr. Ahmed as their expert in Di Chuale. They had his co-author on those reports, Dr. Steinman. So there's striking similarity in those. There's no legal error in him relying in part on his analysis to inform his determination. Congress has designated special masters as experts and entitled to special statutory deference in their fact-finding on these difficult issues. One would think you would want the fact-finder to just rely on the record itself. Of course. To render a finding. Correct. But not based on any kind of background knowledge or insights the fact-finder might have inside his head. Well, respect to Your Honor, he did both. Again, he considered the – he had expressly addressed every piece of evidence in this case, including the evidence that was – the same evidence that was submitted in the Di Chuale and McCollum cases. He addressed that anew. And he used all of that to inform his decision. And, again, that's part of his job as fact-finder, weighing in the evidence, and that's entitled to high deference from this court. It's respectfully not this court's job to re-weigh the evidence or assess his assessment of the probative value of the evidence. Okay. Thanks very much. Ms. Wilson, we have some rebuttal time left. I would just like to start by saying that none of the law cited on page 13 of Respondent's Brief suffers directly from a Prong 1 issue. Causation and fact in the act involves ascertaining whether this sequence, AK's sequence of cause and effect, is logical and legally probable. It is on a case-by-case basis, and when you review the totality of the evidence, it confirms in this case that AK suffered from narcolepsy. He did not suffer from narcolepsy before he received his flu vaccinations, and there is no alternative cause alleged. The chief, however, reviews the evidence in a manner that is inconsistent with the law, and in doing so, what the chief is essentially saying is that you can't bring any other scientific evidence, hardly, in front of me because I'm allowed to review it like a scientist, and then instead of giving it the legal weight, I'm going to potentially dismiss the claim. The purpose of viewing the evidence from the vantage point consistent with the act is to provide every person who received a vaccination, because the data establishes that it's safe, an opportunity to bring a claim and propose that they were unfortunately one of these rare individuals that science simply cannot yet identify. Even Dr. Dai agrees that there is strong and compelling evidence that another flu vaccine and a wild-type infection, both of which is contained in the vaccine AK received, can cause narcolepsy. He just doesn't think that there is scientific proof that the flu missed directly, and he wants objective confirmation. That is not the vantage point of the act. We please ask that you remand this and ask for a review of the evidence that is from the vantage point of the act. AK's evidence-to-record more closely mirrors cases like Alfin, Andreou, and Capizano. That is why the chief's review of the legal error should be reversed. Thank you. Okay, thank you. We appreciate the argument. The case is submitted.